THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| ) | Case No. 2:01CV614 S |
| GILBERT MARTINEZ, ) | |
| Plaintiff, ) | |
| ) | MEMORANDUM DECISION |
| vs. ) | ON MOTION FOR |
| ) | SUMMARY JUDGMENT |
| ) | |
| JO ANNE B. BARNHART, Commissioner ) | |
| of Social Security, ) | |
| Defendant. ) | |
| ) | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

Plaintiff Gilbert Martinez alleges that the Social Security Administration ("the Agency") intentionally discriminated against him on the basis of race and national origin in February 1997, when the Agency demoted him from the position of Hearing Office Chief Administrative Law Judge ("HOCALJ") to Administrative Law Judge ("ALJ"); and in September 1997, when the Agency did not re-select Plaintiff for the HOCALJ position he previously held. Plaintiff also alleges that the Agency retaliated against him for filing a complaint of discrimination by not selecting him for the HOCALJ position in September 1997. Finally, Plaintiff alleges that the Agency subjected him to "a continuing pattern and practice of retaliatory harassment."

Between September 1997 and June 1999, Plaintiff filed five separate Equal Employment Opportunity Commission ("EEOC") cases, all of which were decided adversely to Plaintiff. On August 9, 2001, Plaintiff initiated this action, alleging discrimination on the basis of national

origin and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § § 2000(e), <u>et.</u> <u>seq</u>.  Defendant has moved for summary judgment pursuant to Rule 56(b).

## II.  FACTUAL BACKGROUND

Plaintiff, who is Hispanic, began his employment as an ALJ on September 5, 1989.  On September 9, 1992, Plaintiff was appointed to be Acting HOCALJ for the Salt Lake City hearing office.  He was appointed by James R. Rucker, Jr., Regional Chief Administrative Law Judge for Region VII.  Plaintiff asserts Judge Rucker told him that his selection was made at the request of Acting Chief Administrative Law Judge Jose Anglada; he also asserts that no other judge wanted the position because of ongoing conflict with the Hearing Office Manager.

On February 6, 1994, based on Judge Rucker's recommendation, Plaintiff was selected for the position of HOCALJ for the Salt Lake City Hearing Office.  Plaintiff notes that he had been acting HOCALJ for one and a half years, an unusually long time, and that prior to his selection, he solicited support from numerous community leaders.  In September 1996, Judge Rucker appointed Plaintiff Acting HOCALJ for the Billings, Montana, Hearing Office.  Plaintiff states that he was selected for the Billings job because of his superior performance in Salt Lake City, and because they hoped he could do for Billings what he had done for Salt Lake City.

On May 20, 1994, Plaintiff began a "romance" with Norella Fryer, a Hearing Clerk in the Salt Lake City Hearing Office.  Ms. Fryer was assigned to Plaintiff's team from March 1993 to May 1997.  In February 1997 Judge Rucker's office received a call from Plaintiff's then-wife's brother and sister-in-law.  They complained that Plaintiff was having an affair with a woman in his office, and that Plaintiff and the woman had traveled together at the government's expense.

Judge Rucker had been unaware of Plaintiff's relationship with Ms. Fryer prior to this phone call.  When he met with Plaintiff and discussed the relationship, Plaintiff said he was in love with Ms. Fryer and that the relationship had been going on for several months. Judge Rucker told him the relationship was inappropriate in light of their working relationship.  He expressed concern that it would "compromise the integrity of the management structure," and that any promotion or other positive change in Ms. Fryer's position would be perceived as resulting from her "sleeping with the boss."  Plaintiff notes that Judge Rucker has been somewhat inconsistent as to the reason for his concern, sometimes saying he was concerned about Plaintiff's supervisory, management role in relation to Ms. Fryer, and sometimes saying he was concerned about the risk of notoriety created by the brother-in-law's phone call.

Judge Rucker told Plaintiff that either Ms. Fryer would have to transfer out of the Salt Lake City Hearing Office, or that Plaintiff would have to step down as HOCALJ in the Salt Lake Office.  He said he would be able to keep his Billing's position because his relationship with Ms. Fryer did not affect personnel there.  Plaintiff opposed the option of having Ms. Fryer transfer out of the Salt Lake Hearing Office.  He maintained that there was nothing inappropriate about the relationship, because he was Ms. Fryer's third-line supervisor, not her first or second.  Plaintiff requested a week to decide what to do.  Although Plaintiff continued to insist that he had done nothing wrong and should not have to step down, Judge Rucker believed that Plaintiff would step down.

One week later, Judge Rucker prepared a memorandum to be distributed to the Salt Lake City Hearing Office after the staff meeting, reluctantly accepting Plaintiff's resignation. However, at the staff meeting Plaintiff announced that he was not stepping down, and then left

3

the office.  When Judge Rucker learned what had happened, he waited for Plaintiff to call him, which he did not do.  Judge Rucker stated that he lost trust and confidence in Plaintiff and that he felt he could no longer rely on Plaintiff to carry out his directives.  He found it incredible that Plaintiff failed to understand the need to relinquish his management role.

On February 13, 1997, Plaintiff was relieved of his HOCALJ duties both in Salt Lake City and Billings.  Plaintiff suffered no decrease in pay and resumed his duties as an ALJ in the Salt Lake City Hearing Office.  When the agency announced the vacant HOCALJ position in the Salt Lake Hearing Office, Plaintiff and four others, including acting HOCALJ James Craig, applied for the position.  Judge Rucker recommended that Judge Craig be chosen over Plaintiff, even though he had less experience that Plaintiff, because Judge Rucker had lost confidence in Plaintiff due to "his inability or refusal to understand some fundamentals of office management."

Following Plaintiff's non-selection for the HOCALJ position, a number of things occurred, which Plaintiff attributes to retaliation for his protected EEOC activity.  On March 20, 1998 Judge Craig and Regional Management Officer James D. Ferguson met with Plaintiff to discuss some complaints they had received about Plaintiff wearing inappropriate attire; failing to sign out when he left the office, which made him difficult to locate; and meeting with female employees behind closed doors.  Judge Craig viewed the meeting as a counseling session. Plaintiff received no written warning or reprimand, and was never disciplined in connection with the matters discussed.

On August 10, 1998 another such counseling session was held with Judge Craig, in which Plaintiff says he was reprimanded for shaking hands with female employees each morning, a complaint that he calls spurious.  At least two different women at different times expressed

4

concern about Plaintiff's handshaking.  One stated that his "morning ritual of shaking her hand" made her uncomfortable.  He was also reprimanded for engaging in disruptive behavior, which he denies that he did.

In the fall of 1998 several clients of Kathy Sheehan, a representative for claimants of Social Security disability benefits, complained about Plaintiff's inappropriate conduct at their hearings.  Ms. Sheehan was told to have her clients reduce their complaints to writing if they wished to pursue them.  She had them do so, and in March 1999 she forwarded those written complaints to Judge Craig.  Plaintiff alleges that Judge Craig solicited complaints about him. David Wells, Acting Regional Management Officer, decided to investigate the complaints.   He contacted other claimant representatives in the area to find out if they had "similar complaints of conduct or bias."  He "found that there was no consensus about any specific problem," and the matter was dropped.  Plaintiff was not told about the investigation.  He argues that this investigation was a blatant campaign on the part of Judge Rucker to discredit him in retaliation for his previous EEOC complaints.

In November 1998 Margie Cooley, a Contract Recording Clerk in the Reno, Nevada Hearing Office sent a letter to Judge Craig as "a formal complaint against ALJ Gilbert A. Martinez for sexual comments and general physical conduct I find offensive."  Ms. Cooley also complained about Plaintiff's handshaking, stating that once he grabbed her hand and pulled her toward him, and another time he forced her to hold a handshake unwilling.  She said she was very uneasy around him.  Judge Craig forwarded the letter to Judge Rucker, who instructed him to remove Plaintiff from the docket rotation in Reno.  Plaintiff notes that they did not discuss the matter with him before removing him.

### III.  STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is proper only when the pleadings, affidavits, depositions or admissions establish there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law.  The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party.[1]  E.g., *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  When summary judgment is sought, the movant bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record and affidavits, if any, it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

In considering a motion for summary judgment, we must "view all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party and determine whether there exists a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law."  *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567 (10th Cir. 1994).  An issue of material fact is genuine if a "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### IV.  DISCUSSION

**A.  There is Insufficient Direct Evidence to Demonstrate Discriminatory Motive.**

It is well-established that where a plaintiff presents direct evidence of a discriminatory motive–such as statements that reflect discriminatory motive on their face and without

---

[1]Whether a fact is material is determined by looking to relevant substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

interpretation–the Court need not apply the burden-shifting analytical method established by *McDonnell-Douglas* to determine discriminatory motive. Plaintiff argues that Judge Rucker's alleged statement, "Matt is white," constitutes this type of direct evidence.

Plaintiff's first mention of this explicitly discriminatory statement was at a deposition on June 3, 1999, over two years after Judge Rucker allegedly made the statement on February 6, 1997. Defendant notes that had this statement been made, it would have unquestionably been the most significant event in Plaintiff's discussions with Judge Rucker regarding his demotion, and the single most probative fact in all of his EEOC cases. However, Plaintiff made no mention whatsoever of such a comment by Judge Rucker in any of the statements he submitted in his EEOC cases. There are nine different documents prepared between March 1997 and Nov. 1998–seven of which were sworn under oath–that detail the basis for Plaintiff's discrimination claims, and not one of them mentions the "Matt is white" comment. In his "Formal Complaint" dated less than two months after the alleged statement was made, Plaintiff made no mention of the statement, but expressly relied instead on *indirect* evidence: "[I]t is reasonable to *infer* that my race or national origin (Hispanic) was a factor in the wrongful discharge under Disparate Treatment." In a later affidavit Plaintiff refers at length to the Matt Trocheck situation, and in another he discusses at length his meeting with Judge Rucker, but in neither of these affidavits does Plaintiff mention the "Matt is white" comment.

The Court agrees with Defendant that given Plaintiff's legal education, his professional experience, and his demonstrated willingness to complain about any Agency action toward him, it is inconceivable that he would have neglected to mention such a discriminatory comment in all those statements. Judge Toole, in Plaintiff's first EEOC case, found Plaintiff's allegation of the

"Matt is white" comment to be a "recent fabrication" that deserved no credence.  This Court is not simply adopting ALJ Toole's credibility determination; however, her determination, considered in light of the other facts of the case, indicates to the Court that there is insufficient evidence that the alleged statement was ever made to create a genuine issue of fact.

Plaintiff has submitted a supplemental memorandum to dispute Defendant's argument that the "Matt is white" comment is a recent fabrication that should not be considered.  The only evidence Plaintiff provides to show that he had mentioned the comment earlier, is his 1999 deposition in which he said, "I think I mentioned that to–you're talking about Mr. Bryck, Jim Bryck?" and "I told Mr. Bryck."

Plaintiff also argues that while the absence of the comment from Plaintiff's earlier affidavit may create an issue of credibility, the comment is not *inconsistent* with plaintiff's deposition testimony.  The Court agrees with Plaintiff that summary judgment is an inappropriate time for determining credibility issues; however, if an allegation is so completely lacking in credibility that a reasonable fact-finder could not find that the alleged comment was actually made, that allegation standing alone does not create a *genuine* issue of fact.  "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the movant."  *Lawmaster v. Ward,* 125 F.3d 1341, 1347 (10th Cir. 1987).

In light of all the evidence, the Court finds that Plaintiff's allegation that Judge Rucker made the statement "Matt is white," and that Plaintiff thinks he mentioned the comment to Jim

Bryck soon after it was made, is insufficient to create a genuine issue of material fact.  Therefore,

the court will not consider the "Matt is white" comment in determining discriminatory intent..

## B.  Application of the *McDonnell Douglas* burden-shifting analysis to Plaintiff's first claim, Plaintiff's demotion from HOCALJ to ALJ

As the Court has determined that there is no "direct evidence" of employment

discrimination in this case, we must apply the *McDonnell Douglas Corp. v. Green,* 411 U.S. 794

(1973), burden-shifting analysis to determine whether there is sufficient evidence of

discrimination to avoid summary judgment.  The first requirement is that Plaintiff establish a

prima facie case of race discrimination.  Defendant argues that under *McDonnell Douglas,*

Plaintiff is required to identify a similarly situated non-Hispanic employee who was treated more

favorably than he was.  However, in *Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d

1220, 1229 (10th Cir. 2000), the Tenth Circuit held that the requirements for a prima facie case

are as follows:

> 1) he belongs to a protected class;
> 2) he was qualified for his job;
> 3) despite his qualifications, he was discharged
> 4) the job was not eliminated after his discharge.

Plaintiff makes a prima facie case of discrimination under these requirements.  He belongs to a

protected class.  It is not disputed he was qualified for his job.  He was discharged, and the job

was not eliminated.  Under *McDonnell Douglas* burden-shifting paradigm, the Agency must now

provide a facially non-discriminatory reason for demoting Plaintiff.

The Agency has provided a facially non-discriminatory reason for its actions with regard

to Plaintiff.  Judge Rucker stated that he relieved Plaintiff of his supervisory duties as HOCALJ

because Plaintiff was openly having an affair with a subordinate employee.  There had been at

least one complaint regarding this relationship, and Plaintiff had refused to accept any of the options that Judge Rucker suggested for resolving the problem.  Plaintiff insisted that he retain his supervisory duties in the office and that Ms. Fryer continue working in the office as well.  As a result of this behavior, Judge Rucker lost trust and confidence in the Plaintiff.  We find that the Agency has met its burden of providing a facially nondiscriminatory reason for demoting Plaintiff from HOCALJ to ALJ.

The burden now shifts back to Plaintiff to show that the Agency's stated reason is actually a pretext for discrimination.  Plaintiff has offered three facts as evidence of pretext.  First, he says he was demoted for violating a rule or policy that did not exist.  Second, non-minority employees received no discipline for engaging in the same conduct.  Third, Judge Rucker has offered conflicting explanations of his actions against Plaintiff.

Plaintiff first offers as evidence of pretext the fact that there was no Agency rule or policy that prohibited Plaintiff's relationship with Ms. Fryer.  Plaintiff offers no authority for his position that there has to be a stated rule or policy prohibiting such relationships in order for Judge Rucker's actions to be valid.  Judge Rucker's concerns about the highest-ranking person in the office (Plaintiff) openly having an affair with a subordinate, and about the effect that might have on the office, are legitimate and reasonable concerns.  Just because the Agency had no stated policy regarding such affairs, does not mean that Judge Rucker's stated reasons for demoting Plaintiff were merely pretext for discrimination.

Plaintiff next offers as evidence of pretext the fact that non-minority employees received no discipline for engaging in the same conduct.  Disparate treatment of other similarly-situated, nonprotected employees who engaged in conduct of comparable seriousness may constitute

evidence of pretext. *Kendrick v. Penske Transportation Inc.,* 220 F.3d at 1232. The parties in this case seem to agree that the only potentially similarly-situated person who engaged in similar conduct is RMO Matt Trocheck. Defendant argues, and the Court agrees, that Mr. Trocheck's employment status and the circumstances surrounding his case, are different enough that he cannot reasonably be considered "similarly situated."

Mr. Trocheck was a Regional Management Officer. Like the Plaintiff, he reported directly to Judge Rucker and he was a supervisory employee. However, he was not a HOCALJ or an ALJ and his duties were entirely different. Also, the circumstances leading to Plaintiff's removal were very different than the circumstances in the Trocheck case. First, when Judge Rucker confronted Mr. Trocheck about his alleged affair, he denied it, as did the female employee allegedly involved. Plaintiff, on the other hand, not only admitted to having an affair with a subordinate, but also insisted that nothing was wrong with it and that he should be permitted to continue it. Although Mr. Trocheck supervised the woman he was involved with, she worked in the Seattle office and he worked in the Denver office. Plaintiff and Ms. Fryer, on the other hand, worked together daily in the same office, and he had "total supervisory control" over her. (Marlene Morris affidavit at 3). The undisputed facts of this case are insufficient to support Plaintiff's claim that similarly-situated non-protected employees were treated differently in similar situations.

Plaintiff's third evidence of pretext is the fact that Judge Rucker has offered conflicting explanations of his actions against Plaintiff. Judge Rucker has said that the reason for the demotion was Plaintiff's superior/subordinate relationship with Ms. Fryer. However, when he initially received the phone call from Plaintiff's sister-in-law, he told her he couldn't do anything

about the relationship because it was not work-related.  Only when she told him they were

traveling together on government money, did he take action.  Plaintiff's argument does not

address the Agency's stated non-discriminatory reason for its actions.  Judge Rucker said his

motivation for demoting Plaintiff was that he had lost trust and confidence in the Plaintiff when

Plaintiff  insisted that he had done nothing wrong and that he should be able to retain his

supervisory duties in the office and that Ms. Fryer should continue working in the office as well.

Plaintiff has not provided evidence that this is pretext.

Judge Rucker has also claimed he demoted Plaintiff because of the notoriety of his

relationship with Ms. Fryer.  Plaintiff argues that the notoriety of his situation was certainly no

greater than that of Matt Trocheck and the irrate husband situation.  However, as demonstrated

above, the differences between Plaintiff and Mr. Trocheck, their situations, and their handling of

those situations are substantial enough that they should not be considered similarly situated.  The

Tenth Circuit has made it clear that differences in treatment within organizations are inevitable,

and the only time those differences are illegal is when they are based on protected class

characteristics:

> Title VII does *not* make unexplained differences in treatment per se illegal nor
> does it make inconsistent or irrational employment practices illegal.  It prohibits
> only intentional discrimination *based upon* an employee's protected class
> characteristics.
>   Human relationships are inherently complex.  Large employers must deal with a
> multitude of employment decisions, involving different employees, different
> supervisors, different time periods, and an incredible array of facts that will
> inevitably differ even among seemingly similar situations.  The law does not
> require, nor could it ever realistically require, employers to treat all of their
> employees all of the time in all matters with absolute, antiseptic, hindsight
> equality.

Plaintiff has not provided adequate evidence the Agency's action in demoting him was based on his protected class characteristics.

**C.  Application of *McDonnell Douglas* to Plaintiff's second claim, his non-selection for the vacant HOCALJ position**

Concerning Plaintiff's second claim, his non-selection for the vacant HOCALJ position in Sept. 1997, Defendant concedes that Plaintiff produced sufficient evidence to establish a prima facie case of race discrimination and/or retaliation.   The agency has also articulated a legitimate non-discriminatory reason for his non-selection.  Judge Rucker expressed concern at Plaintiff's apparent inability to appreciate the inappropriateness of his romance with a subordinate, and also with his disregard for Judge Rucker's directives.  He also said he had lost confidence in plaintiff due to his inability or refusal to understand fundamentals of office management.  This is a legitimate, non-discriminatory reason for not selecting Plaintiff.

Once again, Plaintiff bears the burden of providing evidence of pretext.  Plaintiff states that there is ample evidence of pretext.  First, Ms. Fryer had left the agency prior to the time the HOCALJ position was filled, thus removing the relationship issue.  Second, Plaintiff's objective qualification were far superior to Judge Craig, who was chosen for the position.  And finally, if the initial demotion was discriminatory, Plaintiff argues there is a strong inference that the subsequent refusal to rehire was also discriminatory.

The fact that Ms. Fryer had left the agency prior the time the position was filled is irrelevant, as the relationship was no longer at issue.  Judge Rucker stated that his reason for not rehiring Plaintiff was because he no longer had confidence in him, nor did he feel he could trust him.  Plaintiff has not demonstrated how Ms. Fryer's leaving the agency is evidence that this reason is pretext.

13

The fact that Plaintiff's objective qualifications were, in his opinion, superior to those of the person selected for the job is also irrelevant if there is a legitimate, non-discriminatory reason for not selecting Plaintiff.  The Agency has provided such a reason, and Plaintiff has failed to demonstrate how his superior qualifications prove that Judge Rucker's stated reason was in fact pretext for discrimination.  The Tenth Circuit has held that a comparison of "objective" job qualifications, even where the successful applicant was "not nearly as well qualified" as the non-selected person, is not adequate to prove intentional discrimination.  *Sanchez v. Philip Morris Inc.,* 992 F.2d 244, 247 (10th Cir. 1993).  The Court stated, "we are not in the business of determining whether an employer acted prudently or imprudently in its hiring decisions."

Finally, the Court has determined that there is insufficient evidence for a reasonable jury to find that the initial demotion was discriminatory; therefore, Plaintiff's third argument that the subsequent refusal to rehire was also discriminatory, also fails.

**D.  Retaliatory harassment claims**

Plaintiff also alleges that the Agency retaliated against him for filing a complaint of discrimination by not selecting him for the HOCALJ position in September 1997.  He also alleges that the Agency subjected him to "a continuing pattern and practice of retaliatory harassment."

In order to establish a prima facie case of retaliation, Plaintiff must show: "(1) he or she engaged in protected opposition to discrimination; (2) he or she was subject to adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action." *Kendrick v. Penske Transportation Services, Inc.,* 220 F.3d 1220, 1234 (10th Cir.

14

2000); *Trujillo v. University of Colorado Health Sciences Center,* 157 F.3d 1211, 1215 (10th Cir.

1998).

Plaintiff in this case meets the first requirement in that he filed EEOC claims.  He also

alleges the following adverse employment actions:

(1) Failure to reinstate Plaintiff to HOCALJ position following Fryer's departure from the Agency.

(2) March 20, 1998 "counseling session" with Judge Craig.  Plaintiff alleges retaliation in both the substance of the criticisms and the way they were presented.

(3) August 10, 1998 "counseling session" with Judge Craig.

(4) Solicitation of complaints from claims representative Kathy Sheehan.

(5) Failure to comply with Agency policy in relation to complaints made.

(6) Attempt to solicit negative information about Plaintiff from claims representatives in Utah, undermining Plaintiff's reputation by informing them he was under investigation.

(7) Judge Craig's attempt to create complaints against Plaintiff based on his conduct during appeals hearings.

(8) Judge Craig's handling of the Margie Cooley complaint, including his failure to inform Plaintiff of the complaint.

(9) Judge Craig's exclusion of Plaintiff from the Reno docket based on the Cooley complaint.  This action failed to comply with Agency policy regarding handling of a complaint or imposition of disciplinary action.

It is questionable whether all of these actions constitute adverse employment actions.  Clearly 1

and 9 constitute tangible employment actions.  Plaintiff claims that the other actions "constituted

an outrageous attempt to damage Judge Martinez' reputation and standing as a judge by

soliciting, advocating, and creating complaints against him."  He goes on to say that it is difficult

to imagine a more harsh means of retaliating against a person in his position.

The Court finds that there is no evidence that the Agency retaliated against Plaintiff for filing his EEOC complaint by not selecting him for the HOCALJ position in September 1997. As set out above, the Agency has articulated a legitimate, non-discriminatory reason for not selecting Plaintiff for the position.  Plaintiff has failed to provide any evidence that this reason is pretext or that the real reason was discrimination or retaliation.

While Plaintiff's exclusion from the Reno docket does constitute an adverse employment action, Plaintiff has provided no evidence of a causal connection between his EEOC claims and that exclusion.  The reason the Agency gave for excluding him is that they had received a complaint of sexual harassment against Plaintiff from Margie Cooley.  Ignoring Ms. Cooley's complaint could have exposed the Agency to liability on a claim of sexual harassment.  The Agency may not have handled the complaint and the disciplinary action as well as they could have, but that does not necessarily mean that its motives were discriminatory or retaliatory.  The Tenth Circuit has held that there are a host of motives, both proper and improper, that do not give rise to liability under Title VII, including "personal or political favoritism, a grudge, random conduct, or error in administration of neutral rules."  *Equal Employment Opportunity Commission v. Flasher Company, Inc.,* 986 F.2d 1312, 1321 (10th Cir. 1992) (citing *Benzies v. Illinois Dep't of Mental Health & Development Disabilities,* 810 F.2d 146, 148 (7th Cir.), *cert. denied,* 483 U.S. 1006 (1987).   Plaintiff has failed to demonstrate that his exclusion from the Reno docket was motivated by retaliation.

As for Plaintiff's remaining allegations, even if they rise to the level of adverse employment actions–as opposed to reasonable, measured responses to complaints about Plaintiff's work performance–there is no evidence of a causal connection between Plaintiff's

EEOC activity and the Agency's actions.  Plaintiff's allegation that the complaints about his behavior were inaccurate does not create a genuine issue of fact.  The only real issue is whether the Agency has articulated a legitimate non-discriminatory reason for investigating those complaints, which it has.  Plaintiff then has the burden of demonstrating that the Agency's reason was pretext for discrimination and retaliation, which he has not done.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.

SO ORDERED.

DATED this 2nd day of June, 2005.

BY THE COURT:

DAVID SAM
SENIOR JUDGE
U.S. DISTRICT COURT

17